IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO: 5:11-CV-325-F

| | |
|---|---|
| JERRALD MEEK and wife TRUDY MEEK, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | **MEMORANDUM &** |
| ) | **RECOMMENDATION** |
| TOWNSEND REAL ESTATE, INC., ) | |
| *et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____) | |

This cause comes before the Court upon the following motions:

1) Defendants' motions to dismiss (DE-23 & 35);

2) Plaintiffs' motion for leave to file amendment/supplement to complaint (DE-26);

3) Plaintiffs' motions to postpone ruling (DE's 28 & 44);

4) Plaintiffs' motion for oral argument (DE-33); and

5) Plaintiffs' motions for sanctions (DE's 45, 47, & 54).

These motions are now ripe for adjudication and, pursuant to 28 U.S.C. § 636(b)(1), they have been referred to the undersigned for the entry of a Memorandum and Recommendation.

**I.  Plaintiffs' motion to amend and Defendants' motions to dismiss**

As an initial matter, the undersigned notes that Plaintiffs' have filed a "motion for leave to file amendment/supplement to complaint."  (DE-26).   Rule 15(a) of the Federal

Rules of Civil Procedure states that a party's pleadings may be amended upon written consent of the adverse party or by leave of court. Leave to amend the pleadings "shall be freely granted when justice so requires." F.R.Civ.P. 15(a)(2). The liberal policy for allowing amendments to pleadings should be followed unless the Court finds a justifying reason for disallowing the amendment. Foman v. Davis, 371 U.S. 178, 182 (1962). It is an abuse of discretion to deny a motion for leave to amend without finding a justifying reason. *Id.* In all instances, leave to amend should be given freely in the absence of undue delay, bad faith, improper motive, futility, undue prejudice to the opposing party, or some other justifying reason. Bireline v. Seagondollar, 567 F.2d 260 (4th Cir. 1977). Accordingly, it is RECOMMENDED that this request be GRANTED, and the undersigned will consider Plaintiffs' proposed amendments (DE's 26-1 through 26-6) during the analysis of Defendants' motion to dismiss.

Plaintiffs have filed this suit alleging numerous state and federal law violations, stemming from their occupancy of rental property owned or managed by Defendants. (DE-1). Specifically, Plaintiffs contend that, on February 16, 2009, they entered into a lease agreement with Defendant Townsend Real Estate, Inc. ("Townsend") for 1775 Rim Road, Fayetteville, North Carolina ("leased premises"). *Id.* at ¶ 1. This lease was conditioned upon Defendants making various repairs to the leased premises. *Id.* at ¶ 2. However, Plaintiffs assert that "defendants did not have any intention of making repairs to the exterior wall during plaintiffs' tenancy." *Id.* They further allege that "[w]ithout assurance that the requested repairs would be made, plaintiffs would not have entered a

2

Case 5:11-cv-00325-F   Document 60   Filed 12/21/11   Page 2 of 17

lease for the leased premises." *Id.* Likewise, Plaintiffs assert that Defendants "made false and misleading statements, with no intention of performing promises made to plaintiffs, for the purpose of inducing plaintiffs to enter a lease." *Id.* at ¶ 16.

In addition, Plaintiff's argue that the leased premises were "left in a cluttered condition with several items left around the property, and the yard was not properly kept." *Id.* at ¶ 3. Therefore, when Plaintiff's moved in they had to clean the property. *Id.* Plaintiffs also contend that they repainted the leased premises, although they concede they were reimbursed for this. *Id.* at ¶ 4. They further complain that the deck behind the leased premises sloped in the wrong direction, causing water to run toward the house. *Id.* at ¶ 5. This condition made it "difficult to keep insects and other vermin out of the kitchen." *Id.*

Likewise, in the summer of 2010, the plumbing in the kitchen at the leased premises ruptured. *Id.* at ¶ 6. Again, Plaintiffs concede that Townsend repaired the plumbing. *Id.* at ¶ 7. However, Plaintiffs allege that water damage in the kitchen was not repaired. *Id.* at ¶¶ 7-8. In late October, 2010, Plaintiff Jerrald Meek contends he "fell through the rotten kitchen floor at the Leased Premises." *Id.* at ¶ 11.

Between September-November, 2010, Plaintiff cite several other instances where they complained about the conditions of the leased property and Plaintiffs failed to repair said conditions. *Id.* at ¶¶ 9-10. Moreover, Plaintiffs contend that "Defendants fraudulently attempted to collect rent in full on premises known to be in an unwarranted condition . . . and maliciously attempted to collect repair costs which plaintiffs are not

3

liable for." *Id.* at ¶ 16.

Plaintiffs vacated the leased premises on November 17, 2010, and paid Defendants no rent for that month. *Id.* at ¶ 12. Due to a military transfer, Plaintiffs now reside in Colorado Springs, Colorado. *Id.* at ¶¶ II, 11. Defendants mailed at least two billing statements to Plaintiffs. *Id.* at ¶¶ 11-12. These billing statements sought the payment of unpaid rent and also charged Plaintiffs for damage to the Leased Property. *Id.* at ¶¶ 10-13. According to Plaintiffs, they incurred various expenses responding to these billing statements. *Id.* at ¶¶ 10-15.

Furthermore, Plaintiffs allege that these charges were referred by Defendants to various credit bureaus. *Id.* at ¶ 13. As a result, Plaintiffs assert they "have incurred expense in obtaining their consumer credit files from various consumer credit reporting bureaus for the purpose of disputing any charges the . . . [Defendants] may have reported." *Id.* at ¶ 13. Similarly, Plaintiffs contend that Defendants are "taking advantage of the fact that Plaintiffs no longer reside in North Carolina, and are therefore placed at a disadvantage when faced with defending themselves and their credit record against false, excessive and/or otherwise fraudulent charges . . ." *Id.* at ¶ 14.

Ultimately, Defendants attempted to reconcile the unpaid rent and damage to the leased property with Plaintiff's $650.00 security deposit. *Id.* at ¶ 16. *See also*, DE 26-1, pg. 2. Plaintiffs argue that this use of the security deposit constitutes, *inter alia*, "bank fraud", "extortion", and "embezzlement". (DE-1 at ¶¶ 16-17). Specifically, Plaintiffs allege that "Defendants have converted funds belonging to plaintiffs, in the form of a

4

security deposit to defendants' own use claiming they have been applied to charges . . ." *Id.* at ¶ 16. Likewise, Plaintiffs contend that Defendants' actions constitute a "scheme or artifice to defraud Plaintiff by knowingly and maliciously charging plaintiffs for repairs to the Leased Premises which plaintiffs are liable for, and/or charging plaintiffs excessive amounts for repairs and unpaid rent." *Id.* at ¶ 16. Taken together, Plaintiffs argue that Defendants' actions constitute "racketeering activity." *Id.* at ¶ 17.

Based on these allegations, Plaintiffs assert the following claims: 1) a violation of N.C. Gen. Stat. § 42-42 for negligently failing to keep the leased premises in a clean condition; 2) a violation of N.C. Gen. Stat. § 42-42 for failing to make necessary repairs to the leased premises; 3) a violation of N.C. Stat. § 42-42 for seeking to collect rent while the leased premises were in an unfit condition; 4) a violation of N.C. Gen. Stat. § 75-1.1 for charging Plaintiffs' excessive rent; 5) common law breach of covenant of quiet enjoyment; 6) common law fraud eviction due to the condition of the property; 7) common law fraud for falsely representing that certain repairs would be made; 8) common law fraud for charging excessive rent and fees; 9) a violation of the North Carolina Racketeer Influenced and Corrupt Organizations Act ("RICO"), N.C. Gen. Stat. § 75D; 10) a violation of the Federal RICO Act, 18 U.S.C. § 1961; 11) a violation of N.C. Gen. Stat. § 75-50 for making false statements which caused financial harm to Plaintiffs' and 12) a violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681. *Id.* at pg. 17-22. In their original request for relief, Plaintiffs sought monetary damages of an unspecified amount. *Id.* at 22-23. Although their amended complaint is more specific as to these amounts, the total

damages sought by Plaintiffs fall well short of $75,000. (DE 26-1).

Defendants move to dismiss Plaintiffs' complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(1) authorizes dismissal of a claim for lack of subject matter jurisdiction. When subject matter jurisdiction is challenged, the plaintiff has the burden of proving jurisdiction to survive the motion. Evans v. B.F. Perkins Co., 166 F.3d 642, 647-50 (4th Cir. 1999). "In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac R.R Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). To this end, "the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." *Id.* The movant's motion to dismiss should be granted if the material jurisdictional facts are not in dispute and the movant is entitled to prevail as a matter of law. *Id.*

"The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint...." Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, a plaintiff must " 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " Erickson v. Pardus, 551 U.S. 89, 93 (2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). The facts alleged must "raise a right to relief above the speculative level," and the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 555, 570. "A claim has

6

facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id*. A complaint may survive a motion to dismiss only if it "states a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense." *Id.* at 1950. Without such "heft," claims cannot establish a valid entitlement to relief, as facts that are "merely consistent with a defendant's liability" fail to nudge claims "across the line from conceivable to plausible." *Id.* at 1947-1951. The undersigned notes that, as evidenced by the above summary of Plaintiffs' claims, much of Plaintiffs' Complaint could be dismissed pursuant to Rule 12(b)(6) because it simply contains "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id*. This is especially true of Plaintiffs' two federal claims.

Regardless, to hear or decide a case the Court must first have jurisdiction over the subject matter of the litigation. It is well established that federal courts are courts of limited jurisdiction, possessing only that power authorized by the Constitution and federal statute. *See* Willy v. Coastal Corp., 503 U.S. 131, 136-137(1992). This limited jurisdiction is not to be expanded by judicial decree. American Fire & Casualty Co. v. Finn, 341 U.S. 6 (1951). *See also*, Kokkonen v. Guardian Life Ins. Co. of America, 511

U.S. 375, 377 (1994). The burden of establishing the contrary rests upon the party asserting jurisdiction. *See*, McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 182-83 (1936). The two most commonly recognized and utilized bases for federal court jurisdiction are (1) "federal question," 28 U.S.C. § 1331, and (2) "diversity of citizenship." 28 U.S.C. § 1332. The allegations contained in the complaint filed by Plaintiffs do not fall within the scope of either form of this Court's limited jurisdiction.

First, Plaintiffs' factual allegations fail to establish any basis for federal question jurisdiction. Plaintiffs purport to raise federal question jurisdiction by claiming violations of two federal statutes : 18 U.S.C. § 1961 (RICO) and 15 U.S.C. § 1681 (FCRA). All other claims are clearly state statutory or common law claims.

## A. Plaintiffs' RICO claims

RICO "does not cover all instances of wrongdoing . . . [r]ather, it is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity" US Airline Pilots Ass'n v. Awappa, LLC, 615 F.3d 312, 317 (4th Cir. 2010)(internal quotation omitted). Civil RICO is an extraordinary remedy designed to provide relief against well-established instances of sustained and widespread criminal activity. Synergy Fin., LLC v. Zarro, 329 F. Supp. 2d 701, 712 (W.D.N.C. 2004); Ferguson v. Maita, 162 F. Supp. 2d 433, 439 (W.D.N.C. 2000). The Fourth Circuit "will not lightly permit ordinary business contract or fraud disputes to be transformed into federal RICO claims." Flip Mortg. Corp. v. McElhone, 841 F.2d 531, 538 (4th Cir. 1988); Menasco, Inc. v. Wasserman, 886 F.2d 681, 683 (4th Cir. 1989) ("RICO is not available for the ordinary

8

run of commercial transactions"). Thus, as an initial matter, the undersigned finds that the harms alleged in this case do not "pose a special threat to social wellbeing," and they are not the proper target of a claim under RICO. *See*, Al-Abood v. El- Shamari, 217 F.3d 225, 238 (4th Cir. 2000).

Moreover, to state a civil RICO claim, a plaintiff must allege that the defendants engaged in, or conspired to engage in, a " pattern of racketeering activity." 18 U.S.C. § 1962. A "'pattern of racketeering activity' requires at least two acts of racketeering activity, one of which occurred after the effective date of [the RICO statute] and the last of which occurred within ten years ... after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5).

In addition to the required predicate acts, a plaintiff "must show that the racketeering predicates are related, and that they pose a threat of continued criminal activity" in order to establish a pattern. Foster v. Wintergreen Real Estate Co.*,* 363 Fed. Appx. 269, 273 (4th Cir. 2010). Thus, "[t]he existence of a pattern depends on context, particularly on the nature of the underlying offenses." HMK Corp. v. Wolsey*,* 828 F.2d 1071, 1074-75 (4th Cir. 1987). Assuming, *arguendo,* that plaintiffs have sufficiently pled the predicate acts, they still have not pled a RICO pattern because the alleged scheme "does not rise above the routine, and does not resemble the sort of extended, widespread, or particularly dangerous pattern of racketeering which Congress intended to combat with federal penalties." Flip Mortgage Corp. v. McElhone*,* 841 F.2d 531, 538 (4th Cir. 1988)

Each of the necessary elements of a RICO claim must also be pled with sufficient

9

specificity to meet the "plausibility" standard under Twombly and Iqbal. *See*, Goldstein v. Bank of America, N.A., 2010 WL 1252641 at * 6 (W.D.N.C. January 19, 2010). Furthermore, "'in order to survive a motion to dismiss a RICO claim, a plaintiff must plead the circumstances of the fraudulent acts that form the alleged pattern of racketeering activity with sufficient specificity pursuant to Fed. R. Civ. P. 9(b).'" Williams v. Equity Holding Corp., 245 F.R.D. 240, 243 (E.D. Va. 2007)(*quoting* Menasco, Inc. v. Wasserman, 886 F.2d 681, 684 (4th Cir. 1989). Rule 9(b) of the Federal Rules of Civil Procedure states: "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake . . . [m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." A party asserting fraud must identify, with particularity, both the statements alleged to have been misleading or fraudulent and the reasons why such statements were misleading. Krispy Kreme Doughnut Corp. v, Advantage Group Enter., Inc., 2008 WL 5216227, at *3 (M.D.N.C. Dec, 11,2008).

Clearly, "[i]t is not enough for a plaintiff to file a RICO claim, chant the statutory mantra, and leave the identification of predicate acts to the time of trial." Synergy Fin., LLC, 329 F. Supp. 2d at 712 (W.D.N.C. 2004). Plaintiffs' Complaint, as amended, generically recites various conduct by Defendants in the form of mail fraud, wire fraud, bank fraud and extortion. These allegations are not specific enough to satisfy either plausibility standard of Twombly/Iqbal or the heightened pleading standard of Rule 9(b) .

For these reasons, Plaintiffs' RICO claims should be dismissed.

10

## B. Plaintiffs' FCRA claims

The second federal claim raised in Plaintiffs' Complaint is an alleged violation of the FCRA. Specifically, the Complaint states that "defendants claim that plaintiffs owe defendants money, and have repeatedly threatened plaintiffs' credit report" (DE-1, pg. 21). There are only two references to the FCRA in the Complaint, and these references fail to allege any substantive claim under FCRA.

The FCRA imposes civil liability on any person violating duties under the Act. *See* 15 U.S.C. §1681. However, most of the provisions of the FCRA are imposed only on "consumer reporting agencies" and "[o]nly four sections of FCRA place requirements on persons who are not consumer reporting agencies - 1681(d), 1681(m), 1681(q), and 1681(r)." Rice v. Montgomery Ward & Co., 450 F. Supp. 668, 670 (M.D.N.C. May 18, 1978) (recognizing the limited coverage of FCRA). None of these sections are alleged in the Complaint.

It appears that the only possible applicable section based on the facts vaguely alleged in the Complaint would be § 1681s-2(a) which governs "furnishers" of consumer information. This section prohibits the furnishing of information to a consumer reporting agency if the furnisher "knows or has reasonable cause to believe that the information is inaccurate." 15 U.S.C. § 1681s- 2(0)(2011). However, FCRA explicitly bars private suits for violations of § 1681s-2(a). Saunders v. BB&T, 526 F.3d 142, 149 (4th Cir. 2008). Consequently, Plaintiffs have no cause of action pursuant to the FCRA because there are no sections applicable to the facts alleged which provide a plaintiff a civil cause of action.

11

Plaintiff may also allege violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*. However, 15 U.S.C. § 1692d, the only section of FDCPA that could be applicable here, specifically creates an exception from liability for publishing information to consumer reporting agencies. 15 U.S.C. 1692d(3).

For these reasons, Plaintiffs' FRCR and FDCPA claims should be dismissed.

## C.   Diversity and Supplemental Jurisdiction

Furthermore, there is also no basis for a finding of diversity jurisdiction over this complaint. The diversity statute, 28 U.S.C. § 1332, requires complete diversity of parties and an amount in controversy in excess of $75,000.00. 28 U.S.C. § 1332(a). Specifically, United States district courts shall have original jurisdiction of all civil actions where "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs...." 28 U.S.C. § 1332(a). The seminal case in the area of the amount in controversy requirement is St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283 (1938) where the Supreme Court stated:

> The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.
>
> St. Paul Mercury Indem. Co., 303 U.S. at 288-289.

Here, as already noted, Plaintiffs have not met the amount in controversy requirement of 28 U.S.C. § 1332(a), and therefore diversity jurisdiction does not exist.

Finally, a district court enjoys discretion to decline to exercise supplemental

jurisdiction over state law claims after dismissal of all claims brought pursuant to its original jurisdiction. 28 U.S.C. § 1367(c)(3) (2006). *See also*, Hinson v. Norwest Fin. S.C., Inc., 239 F.3d 611, 617 (4th Cir. 2001) (applying abuse of discretion standard to district court's order of remand of state claims). In the interest of avoiding "[n]eedless decisions of state law," the Supreme Court has stated that, when "federal claims are dismissed before trial ... state claims should be dismissed as well." United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966). Notably, district courts may decline to exercise supplemental jurisdiction over state law claims if those claims raise novel or complex issues of state law or if they "substantially predominate" over the claim or claims that are within the court's original jurisdiction. *See* 28 U.S.C. § 1367(c)(1) & (2). A state claim substantially predominates if the claim over which the court has original jurisdiction "is only an incident or adjunct of the state claim and [ ] the state claim is the crux of the action." Spaulding v. Mingo County Bd. of Educ., 897 F.Supp. 284, 289 (S.D.W.Va. August 25, 1995).

Despite Plaintiffs attempts to characterize it otherwise by referring to various federal statutes, the crux of this entire dispute is essentially a disagreement between a landlord and a tenant governed by state law. For that reason, Plaintiff's claims are "substantially predominated" by state law. *See*, Brown v. Cameron, 2008 WL 4820108, *2 (D.S.C. November 5, 2008)("it is readily apparent that a resolution of Plaintiff's . . .problems would be governed by state landlord tenant law and/or state contract law. The claims pose no federal question; thus, they cannot serve as the basis for federal

13

jurisdiction"). Thus, the undersigned RECOMMENDS that supplemental jurisdiction not be exercised over Plaintiffs' remaining claims.

For each of these reasons, the undersigned HEREBY RECOMMENDS that Defendants' motions to dismiss (DE-23 & 35) be GRANTED and that Plaintiffs' Complaint (DE-1), as amended (DE-26), be DISMISSED in its entirety. It is RECOMMENDED that Plaintiffs' federal claims be dismissed with prejudice and their state claims be dismissed without prejudice.

## II. Plaintiffs' other motions

Plaintiffs have filed several other motions, all of which are without merit and/or are rendered moot by the above recommendation.

### A. Motions to postpone ruling and for oral argument (DE's 28, 33, 44)

Specifically, Plaintiffs' motions to postpone ruling (DE's 28 & 44) do little more than supplement their memoranda in opposition to Defendants' motions to dismiss. To the extent they requests any additional relief, it is RECOMMENDED that these motions (DE's 28 & 44) be DENIED for lack of good cause. Likewise, it is further RECOMMENDED that Plaintiffs' request for oral argument (DE-33) on Defendants' motions to dismiss be denied for lack of good cause.

### B. Motions for sanctions (DE's 45, 47, & 54)

Finally, Plaintiffs have filed several motions requesting the imposition of sanctions upon Defendants. (DE's 45, 47, & 54). In these motions, Plaintiffs request sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1927.

14

Rule 11 provides in pertinent part:

> b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.
>
> (c) Sanctions.
>
> (1) *In General.* If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.
>
> F.R.Civ.P. 11

Title 28 § 1927 provides in relevant part:

> Any attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably

15

incurred because of such conduct.

28 U.S.C. § 1927.

The Supreme Court has recognized that § 1927 "does not distinguish between winners and losers, or between plaintiffs and defendants." Roadway Express, Inc. v. Piper, 447 U.S. 752, 762 (1980). Moreover, "[t]he statute is indifferent to the equities of a dispute and to the values advanced by the substantive law." *Id*. Instead, the statute is "concerned only with limiting the abuse of court processes." *Id*. For this reason, a court considering the propriety of a § 1927 award must focus "on the conduct of the litigation and not on its merits." DeBauche v. Trani, 191 F.3d 499, 511 (4th Cir. 1999).

Essentially, Plaintiffs argue that Defendants should be sanctioned because they made false statements and intentionally misstated the law in support of their motions to dismiss. Clearly, in light of the undersigned's previous recommendations, this request is without merit. Likewise, it is Plaintiffs, rather than Defendants, who run the risk of sanctions pursuant to 28 U.S.C. § 1927. Plaintiffs have flooded this court with numerous duplicative and ultimately frivolous filings. Regardless, Plaintiffs' requests for sanctions are without merit, and the undersigned RECOMMENDS they be DENIED.

**III. Conclusion**

For the aforementioned reasons, the undersigned RECOMMENDS that:

1) Defendants' motions to dismiss (DE-23 & 35) be GRANTED and that Plaintiffs' Complaint be DISMISSED;

2) Plaintiffs' motion for leave to file amendment/supplement to complaint be GRANTED (DE-26);

3) Plaintiffs' motions to postpone ruling (DE's 28 & 44) be DENIED;

4) Plaintiffs' motion for oral argument (DE-33) be DENIED; and

5) Plaintiffs' motions for sanctions (DE's 45, 47, & 54) be DENIED.

DONE AND ORDERED in Chambers at Raleigh, North Carolina on Wednesday, December 21, 2011.

_____
WILLIAM A. WEBB
UNITED STATES MAGISTRATE JUDGE