UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:11-CV-325-F

| | |
|---|---|
| JERRALD MEEK and wife, ) | |
| TRUDY MEEK, ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| TOWNSEND REAL ESTATE, INC.; ) | |
| JAMES TOWNSEND; THOMAS NEAL; ) | |
| SANDRA PARROTT; and ) | |
| SUE VERHALEN, ) | |
| Defendants. ) | |

This matter is before the court for *de novo* review of the Magistrate Judge's Memorandum and Recommendation ("M&R") [DE-60] on the following motions: Defendants' Motion to Dismiss [DE-23], Plaintiffs' Motion to Amend their Complaint [DE-26], Plaintiffs' Motion to Postpone Ruling [DE-28], Plaintiffs' Motion for Oral Argument [DE-33], Defendants' Motion to Dismiss Amended Complaint [DE-35], and Plaintiffs' Renewed Motion to Postpone Ruling [DE-44], and Plaintiffs' Motions for Sanctions [DE-45, 47, 54]. Plaintiffs have filed objections [DE-61] to the M&R, and also have filed a Second Motion to Amend their Complaint [DE-62].

**STANDARD OF REVIEW**

Under Rule 72(b)(3), FED. R. CIV. P.,

The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

In conducting the court's de novo review, the court keeps in mind the following rules of law. "The district courts of the United States are courts of limited subject matter jurisdiction." *United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347 (4th Cir. 2009) (citing *Exxon Mobil*

*Corp. v. Allapattah Servs. Inc.*, 545 U.S. 546, 552 (2005)). Generally, a district court only has subject matter jurisdiction over cases arising under the Constitution, laws, or treaties of the United States ("federal question jurisdiction"), 28 U.S.C. § 1331, or claims for more than $75,000.00 where the parties are citizens of different states ("diversity jurisdiction"), *id.* § 1332.

A defendant may challenge subject matter jurisdiction pursuant to Rule 12(b)(1) facially or factually. *See Wollman v. Geren*, 603 F. Supp. 2d 879, 882 (E.D. Va. 2009). If the defendant presents a facial challenge by arguing the complaint fails to allege facts upon which subject matter jurisdiction can be based, all facts alleged in the complaint are presumed true. *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). Alternatively, if the defendant presents a factual challenge by arguing that jurisdictional facts alleged in the complaint are untrue, the court may consider extrinsic information beyond the complaint to determine whether subject matter jurisdiction exists. *See Kerns v. United States*, 585 F.3d 187, 192-93 (4th Cir. 2009). "[W]hen the jurisdictional facts and the facts central to a tort claim are inextricably intertwined, the trial court should ordinarily assume jurisdiction and proceed to the intertwined merits issues." *Id.* at 193 (citing *Jadhav*, 555 F.3d at 348). In both situations, the burden rests with the plaintiff to prove that federal jurisdiction is proper. *See Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

Even if a court has subject matter jurisdiction over an action, Rule 12(b)(6) allows a court to dismiss an action which fails to state a claim on which relief may be granted. FED. R. CIV. P. 12(b)(6). In considering a motion to dismiss, the court assumes the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, the "'[f]actual allegations must be enough to raise a right to relief above the speculative level' and have 'enough facts to state a claim to relief that is plausible on its face.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 n.26 (4th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

2

(2007)); *Ashcroft v. Iqbal*, ___ U.S.___, 129 S. Ct. 1937, 1950 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). When considering a motion to dismiss, the court must keep in mind that " a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 93 (internal citation omitted). Notwithstanding the court's obligation to liberally construe a *pro se* plaintiff's allegations, however, the court cannot ignore a clear failure to allege facts which set forth a claim cognizable in a federal district court. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) ("The 'special judicial solicitude' with which a district court should view such *pro se* complaints does not transform the court into an advocate. Only those questions which are squarely presented to a court may properly be addressed.").

## BACKGROUND

This is a lawsuit brought by aggrieved former tenants, Jerrald and Trudy Meek, against a real estate leasing and management company, its principal and employees, and the rental property owner[1] (collectively "Townsend"). The Meeks entered into a residential rental agreement ("the Agreement")[2] with Townsend for a term of one year[3]; after expiration of the year, the lease ran month-to-month. The Meeks contend that the Agreement, which by its terms is an integrated contract, *see* Agreement at ¶ 31, was conditioned upon certain listed repairs being made to the property by the rental agency or the owner. The Meeks contend that

---

[1] The rental property owner is named Mrs. Verhalen.

[2] The Agreement is an eight-page North Carolina Association of REALTORS®, Inc., Standard Form 410-T Revised 1/2/2008. This Agreement was printed on February 16, 2009. *See* Exh. 1 to Complaint [DE-1].

[3] There appears to be no dispute that this was a one-year lease, although the Agreement itself states: "INITIAL TERM: Beginning Date of Lease: <u>February 17, 2009</u> Ending Date of Lease: <u>February 17, 2009</u>."

3

Townsend refused to supply them with a copy of this list of repairs. The Meeks moved into the property in February 2009.

Over the period of the tenancy, the Meeks made numerous verbal and written requests concerning repairs, *see, e.g.*, Exhibits C-1, -2, -3, -5, -6 to Complaint [DE-1], and, although some repairs were made, many were not. The Meeks contend they performed some repairs themselves, and were compensated only for the materials they purchased. The most serious problems generating the bulk of the complaints were damage to the outdoor deck, which the Meeks removed,[4] and damages to the walls and floor of the kitchen due to water saturation caused by bad plumbing and architectural defects.

Between January and August 2010, Mr. Meek, a servicemember in the United States Army, was deployed to Afghanistan. Upon his return, he began in September 2010, writing letters to Townsend, Delivery Confirmation required, complaining that repairs still had not been made.[5] The October 18th letter, Exh. C-3 to Complaint [DE-1], concluded with the following:

> I have asked that your contractors not build anything until the city inspectors have seen the house. I am working to get them out here as soon as possible and will notify you when the inspection is complete. My attorney seems to think that the inspection may provoke you, but I disagree with him in this regard. I think that if you are a fair landlord then you should understand that this house shouldn't be leased to any one else until repaired; and if you are not, then you will try to rip me off no matter what I do. Therefore, I will seek to have the local government take appropriate action, and if you want revenge, then I'll worry about that later.

---

[4] The Meeks repeatedly complained about the structure and condition of the back deck, and reported that the deck collapsed. Their letter dated September 13, 2010, to Townsend, advises that "we have already begun ripping the deck apart to eliminate the hazard." *See* Exhibit C1 to Complaint [DE-1].

[5] A letter dated October 18, 2010, complains about the condition of the chimney following an inspection for which the Meeks paid. It also includes complaints concerning the pile of rotten lumber resulting from their demolition of the deck which their lawyer advised them not to remove without Townsend's approval, the back kitchen wall that was deteriorating due to water damage, the kitchen floor caving in, the malfunctioning septic system, damage to the front door resulting from a break-in attempt, and damage to bedroom carpeting caused by improperly installed door.

4

*Id.* Two days later, on or about October 20, 2010, the City of Fayetteville Development Services conducted an inspection of the premises, and wrote a letter to the property owner, defendant, Ms. Verhalen, advising that the Rim Road property did not comply "with the Dwelling and Buildings Minimum Standards Code of the City of Fayetteville" in that "Floor framing and flooring need repair, Interior and exterior walls need repair." *Id.* Exh. D. Appropriate repairs were to be made in 30 days.

Mr. Meek wrote Townsend a letter dated November 8, 2010, in which he forbade anyone on Townsend's behalf to enter the premises, contending that Townsend's "Broker Associate," Ms. Parrott, had appeared at the residence uninvited and unannounced on October 20th. He alleged that Ms. Parrott abused and interrogated his wife, and insulted and threatened him. He detailed eight specific demands pursuant to his right to the "Covenant of Quiet Enjoyment" (citing case law), which included that a law enforcement officer must accompany any Townsend representative during future inspections for the purpose of "forcibly remov[ing] you should you become abusive, argumentative, or otherwise unwelcome," that Townsend is "not to engage in any social interaction with my wife or daughter. I will not allow you to further defile or upset the women of my household by speaking to them, touching them, or even making eye contact with them," and that "[y]ou may speak to me only when spoken to." *Id.*, Exh. C-6, p. 2. In closing, Meek declared, "Show up at my door unannounced again and I will press charges for criminal trespassing. Show up unannounced with a sheriff's deputy to forcibly enter without a court order and I will seek to have the sheriff's deputy prosecuted with you." *Id.*

There does not appear to be any dispute as to the content of the correspondence Meek appended to his Complaint. Therefore, the court deems it most expedient to incorporate that correspondence herein by reference. *See* Exhs. C-1, C-2, C-3, C-5, C-6, C-7, and D to Complaint [DE-1].

5

The Meeks moved out of the premises in mid-November "due to unfit conditions less than 30 days prior to the date plaintiffs had planned to leave the State of North Carolina," when Mr. Meek was reassigned to Colorado. *See* Complaint, ¶ 11(c). The Meeks did not pay rent for November 2010. Rather, they contend they suffered damages for "temporary lodging, storage of household goods, and disposal of household goods." *Id.* In mid-December 2010, Townsend mailed a billing statement to the Meeks.

The Meeks filed a complaint with the North Carolina Real Estate Commission. Exhibits attached to Townsend's response to that complaint included a December 17, 2010, letter from Townsend seeking payment of sums listed therein and totaling $3,936.81. The letter advised that it did not constitute a final accounting, but requested payment in full, stating "Your cooperation will be appreciated and will eliminate negative information being reported to the credit bureaus." *Id.*, Exh. E-3.

By letter dated January 18, 2011, *see* Exh. F to Complaint [DE-1], Mr. Meek responded to Townsend's "final accounting" for payment of the adjusted sum of $3,751.81, *see id.*, Exh. E-4. That letter, bearing a Colorado return address, disputes each item comprising Townsend's final accounting figure (including what Meek identified as a $.06 discrepancy in Townsend's *pro rata* calculation of rent due for November), and, *inter alia*, demands a list of credit reporting agencies to which Townsend reported the disputed debt.

The Meeks contend they offered to settle with Townsend in February 2011, but there is not a copy of their offer attached as an exhibit to the Complaint. Rather, according to the Meeks, the letter included the following:

> It is in the best interest of everyone involved that you comply with my previous request and tell me which credit bureau you have reported me to. If you do not, then I may spend a few thousand dollars looking for them. If I must spend more money than I already have finding out what you did to my credit report then I will sue your company for those damages.

Complaint [DE-1] at ¶ 13(f). Townsend did not respond immediately.

6

The Meeks at some point involved the North Carolina Department of Justice. In response to the Consumer Protection Division of the Attorney General's Office notification of the Meeks' complaint, Townsend wrote Mr. Meek on May 18, 2011, specifically addressing seven enumerated issues. *See id.*, Exh. G. That correspondence again reduced the total amount demanded to $3,636.75, and reiterated that Townsend had *not reported any unpaid debt to any credit reporting agency*, but would alert Trans Union if the Meeks did not pay the adjusted balance due. *See id.*

A month later, the Meeks instituted this lawsuit on June 21, 2011, appending twenty documents to the Complaint as exhibits. *See* Complaint [DE-1]. During the course of the litigation to date, the Meeks twice have moved to amend their Complaint, moved three times for imposition of sanctions against the defendants' and/or their lawyer, accused defense counsel of improprieties, and declared that the magistrate judge has not conducted his duties correctly.

The 23-page Complaint, describing the events in meticulous detail, purports to state twelve causes of action against the named defendants:

- **Count I** – violation of N.C. GEN. STAT. § 42-42 (governing Residential Rental Agreements) for negligently failing to provide the property in a "clean condition";
- **Count II** – violation of N.C. GEN. STAT. § 42-42 for failing to make necessary repairs to the premises in a reasonable time;
- **Count III** – violation of N.C. GEN. STAT. § 75-1.1 (prohibiting Unfair and Deceptive Trade Practices) for Townsend's seeking to collect rent for premises in unfit condition;
- **Count IV** – violation of N.C. GEN. STAT. § 75-1.1 for charging the Meeks excessive rent;
- **Count V** – common law breach of covenant of quiet enjoyment;
- **Count VI** – common law constructive eviction due to condition of the property;
- **Count VII** – common law fraud for falsely representing that certain repairs would be made;
- **Count VIII** – common law fraud for charging excessive rent and fees;
- **Count IX** – violation of N.C. GEN STAT. § 75D (North Carolina RICO Act);
- **Count X** – violation of 18 U.S.C. § 1961 (Federal RICO Act);
- **Count XI** – violation of N.C. Gen. Stat § 75-50 ("prohibited acts by debt collectors")
- **Count XII** – violation of 15 U.S.C. § 1581 (federal Fair Credit Reporting Act).

7

Of these twelve claims, only two purportedly arise from federal law; the other ten are North Carolina common law or statutory claims. The Meeks brought this action in the federal district court based on both federal question jurisdiction and on diversity of citizenship subject matter jurisdiction.

## ANALYSIS

In the M&R, the Magistrate Judge found that Meeks had failed to establish subject matter jurisdiction, and recommended that the undersigned allow the defendants' motions to dismiss. Specifically, the Magistrate Judge found that (1) the Meeks failed to state a colorable claim arising under federal law, and therefore they could not establish federal question jurisdiction; (2) the Meeks could not establish diversity of citizenship jurisdiction, and (3) the court should refrain from exercising supplemental jurisdiction over any claims. The Magistrate Judge also recommended, *inter alia*, that the Meeks' various motions for sanctions be denied.

The court reviewed the Meeks' Complaint with attachments, Amended Complaint, and various motions before referring the matter to the Magistrate Judge, and has reviewed all matters of record and the M&R *de novo* since it has become ripe. The court recognizes the Meeks' discomfort, inconvenience and frustration with events arising subsequent to their lease of the Rim Road premises. As the Magistrate Judge points out, North Carolina landlord/tenant law comprehensively covers the Meeks' complaints concerning repairs promised and not made in a timely manner, their complaints about Townsend's handling the matter of unpaid rent, and application of the security deposit to repairs and certain expenses. Notwithstanding their detail, the factual allegations contained in the Complaint and in the First Amended Complaint do not, for reasons stated in the M&R, state claims cognizable under either federal civil RICO statutes, *see, e.g., U.S. Airlines Pilots Ass'n v. Awappa, LLC*, 615 F.3d 312 (4th Cir. 2010), or the federal

8

Fair Credit Reporting Act, 165 U.S.C. § 1681, *et seq.*[6] Neither of these federal statutory schemes is available to address the Meeks' complaints against the named defendants arising from the parties' residential rental agreement. **This is not a federal case** – not so much for want of detail, but for the absence of facts that plausibly could support cognizable federal claims under the statutes cited. The Magistrate Judge correctly recommended dismissal of both purported federal causes of action pursuant to Rule 12(b)(6), FED. R. CIV. P.

The court concurs with the Magistrate Judge's recommendation that supplemental jurisdiction not be exercised over the Meeks' state claims. The Meeks are free to prosecute their state claims in a court of competent jurisdiction in North Carolina's General Courts of Justice.

Finally, the M&R produced herein carefully explains why their alleged damages cannot reach the statutory minimum required for federal diversity jurisdiction, even if they could prove they are citizens of a state other than North Carolina. The Meeks have mis-read or been mis-advised of the effect of statutory provisions for alternative causes of action and the possibility of

---

[6] Neither the Complaint nor the proposed Amended Complaint specifies what section of the Fair Credit Reporting Act the Meeks contend entitles them to recovery against Townsend in Count XII. However, in responding to Townsend's Motion to Dismiss [DE-35], the Meeks explain that their Complaint is sufficiently particularized because Townsend was able to "guess the specific section of the FCRA which we rely upon, [and] even quoted the exact sentence which our claim is based upon." Meek's Opposition Memorandum [DE-27] at 16.

That is, the Meeks argue that their FCRA claim is based on 15 U.S.C. § 1681s-2(a)(1))(A), which states, a "person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." However, the Meeks now admit that Townsend did not, in fact, furnish *any* information about the disputed debt to a credit reporting agency. The only references Meek has made to any comment by the defendants concerning a credit reporting agency is the statement at the conclusion of the two accounting letters from Townsend that, "Your cooperation will be appreciated and will eliminate negative information being reported to the credit bureaus." *See* Exhs. E-3 and E-4 to Complaint [DE-1]. The Meeks' representation in their proposed Amended Complaint, Exh. 1 to [DE-26], that "defendants made false representations that defendants had made a report to plaintiffs credit record when defendants had not," is contrary to the Meeks' own exhibits of record. Meek consistently cites Exhs. E-3 and E-4 for the proposition that "defendants also falsely represented that defendants had reported derogatory information on plaintiffs [sic] credit report." *See, e.g.*, proposed Amended Complaint, Exh. 1 to [DE-26]. That statement is a misrepresentation of the record; Meek has directed the court's attention to no reference in the record of any statement by Townsend (true or false) that it *had reported* the alleged debt to any credit agency.

9

trebled damages in certain cases. Nothing in the law of which the court is aware or which the Meeks have brought to the court's attention provides a chance of their becoming entitled to nine times any actual damages proved in this case. They simply are mistaken that they are entitled to multiple, cumulative recoveries and enhanced damages for a single injury, regardless of the number of alternative causes of action they may allege. *See, e.g., Volumetrics Medical Imaging, Inc. v. ATL Ultrasound, Inc.*, No. 1:01CV182. 2003 WL 21650004, slip op. at *3 (M.D.N.C. July 10, 2003) (citing *Borders v. Newton*, 68 N.C. App. 768, 770, 315 S.E.2d 731, 732 (1984)). The Meeks state that they have alleged "specific amounts for compensatory damages claimed," which they contend amounts to $14,650.30 incurred or to be incurred." Meek Memorandum [DE-24], p. 20. If they were able to prove actual damages in that amount, and it were subject to be trebled, the total amount would be less than $50,000.

Affording the Meeks the *most* liberal construction of their allegations, neither their Complaint nor their proposed Amended Complaint states facts that could support an amount in controversy that exceeds $75,000. Accordingly, this court also lacks subject matter jurisdiction over the supplemental state claims contained in the Complaint.

## CONCLUSION

For the reasons stated therein as supplemented above, the **M&R is ADOPTED** with the following corrections:

●On page 3 of the M&R, the first sentence of the third full paragraph is AMENDED to read:

"Between September - November, 2010, Plaintiffs cite several other instances where they complained about the conditions of the leased property and Defendants failed to repair said conditions."

●On page 5 of the M&R, item (6) contained in the only full paragraph on that page is AMENDED to read:

"6) common law constructive eviction due to the condition of the property . . . ."

10

## SUMMARY

The Meeks' motion for leave to file Amended Complaint, Exh. 1 to [DE-26] is ALLOWED, and the Clerk of Court is DIRECTED to cause that pleading to be filed.

The defendants' motions to dismiss [DE-23 & 35] are ALLOWED;

The Meeks' motions to postpone ruling [DE-28 & 44] are DENIED;

The Meeks' motions for sanctions [DE-45, -47 & -54] are DENIED;

The Meeks' second motion for leave to amend complaint [DE-62] is DENIED;

The Meeks' objections to the M&R are OVERRULED.

The Clerk of Court is DIRECTED to enter judgment accordingly, and to DISMISS this case as against all defendants.

SO ORDERED.

This, the 2ℓ day of February, 2012.

_____
JAMES C. FOX
Senior United States District Judge